UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------- x
                                                 :
REMBRANDT 3D HOLDING LTD.,                        :
                                                 :
                              Plaintiff,          :
                                                 :
              -against-                           :
                                                 :      No. 17 Civ. 00882 (RA)
STREAM TV NETWORK, INC., RAJA RAJAN,              :
MATHAU RAJAN, WALTHER ROELEN, BART                :
BARENBRUG, PETER ROELEN, and HANS                 :
ZUIDEMA,                                          :
                                                 :
                              Defendants.         :
                                                 :
----------------------------------------------- x



**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THE COMPLAINT**



**DLA PIPER LLP (US)**

Hugh J. Marbury
Megan Shea Harwick
Neal F. Kronley
1251 Avenue of the Americas
New York, New York  10020-1104
(212) 335-4500
hugh.marbury@dlapiper.com
megan.shea@dlapiper.com
neal.kronley@dlapiper.com

Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

SUMMARY OF ALLEGATIONS ............................................................ 3

    A.    The Parties and Stephen Blumenthal ............................................. 3

    B.    Substantive Allegations ................................................................. 4

    C.    The Agreement ............................................................................... 5

    D.    Procedural History .......................................................................... 6

LEGAL STANDARD ............................................................................... 7

ARGUMENT ............................................................................................. 8

    I.    The Complaint Fails to State a Proper Claim Against Any Of The
Defendants And Should Be Dismissed ...................................... 9

        A.    Counts I and III  Should Be Dismissed Because None Of
The Individual Defendants Signed NDAs In Their Personal
Capacity ............................................................................ 10

            1.    The Dutch Defendants ...................................... 10

            2.    The Rajans .......................................................... 11

        B.    Counts I, II, III, and V Against Stream TV Should Be
Dismissed Because They Provide No Facts To Support the
Contention That Stream TV Breached Its Obligations
Under The Agreement ...................................................... 12

        C.    Count IV Is Not A Recognized Cause of Action Under
New York Law and Must Be Dismissed .......................... 15

    II.    The Complaint Fails to Establish Personal Jurisdiction Over The
Dutch Defendants ...................................................................... 15

        A.    No General Jurisdiction Exists Over the Dutch Defendants ........ 15

        B.    No Specific Jurisdiction Exists Over the Dutch Defendants ....... 16

CONCLUSION ........................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abercrombie v. College,*
    438 F. Supp. 2d 243 (S.D.N.Y. 2006)..................................................................14

*Abraham Zion Corp. v. Lebow,*
    761 F.2d 93 (2d Cir. 1985)..................................................................................9

*Anderson News L.L.C. v. Am. Media, Inc.,*
    123 F. Supp. 3d 478, 510-11 (S.D.N.Y. 2015) ...................................................15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................................................7, 8

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 570 (2007)......................................................................................7, 8

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985).........................................................................................17

*Daimler AG v. Bauman,*
    134 S. Ct. 746 (2014)..............................................................................8, 16, 17

*Diamond Phoenix Corp. v. Small,*
    No. 05 Civ. 00079 (DMC), 2005 WL 1530264 (D. Me. June 28, 2005)..............15

*Epstein v. Univ. of the S. Pac.,*
    No. 14 Civ. 06012 (AT), 2015 WL 4002344 (S.D.N.Y. June 19, 2015)..............16

*Fuji Photo Film U.S.A., Inc. v. McNulty,*
    669 F. Supp. 2d 405 (S.D.N.Y. 2009)............................................................9, 11

*Georgia Malone & Co. v. Ralph Rieder,*
    926 N.Y.S.2d 494 (1st Dep't 2011),
    *aff'd sub nom. Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511 (2012) ..............11

*Gucci Am., Inc. v. Weixing Li,*
    768 F.3d 122 (2d Cir. 2014)..............................................................................17

*Guggenheimer v. Ginzburg,*
    401 N.Y.S.2d 182 (1977)...................................................................................10

*Jonas v. Estate of Leven,*
    116 F. Supp. 3d 314 (S.D.N.Y. 2015)...................................................................7

*Kirch v. Liberty Media Corp.,*
    449 F.3d 388 (2d Cir. 2006)...............................................................................15

*Labajo v. Best Buy Stores, L.P.,*
    478 F. Supp. 2d 523 (S.D.N.Y. 2007).................................................................10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lerner v. Amalgamated Clothing & Textile Workers Union,*
   938 F.2d 2 (2d Cir. 1991)................................................................................11

*Lewis v. Rosenfeld,*
   138 F. Supp. 2d 466 (S.D.N.Y. 2001).............................................................15

*MacDermid, Inc. v. Deiter,*
   702 F.3d 725 (2d Cir. 2012)..............................................................................8

*Madison Capital Mkts., LLC v. Starneth Europe B.V.,*
   No. 15 Civ. 07213 (RWS), 2016 WL 4484251 (S.D.N.Y. Aug. 23, 2016)...................8, 9, 15

*Mandarin Trading Ltd. v. Wildenstein,*
   16 N.Y.3d 173 (2011) .....................................................................................12

*Meyer v. Bd. of Regents of Univ. of Okla.,*
   No. 13 Civ. 3128 (CM), 2014 WL 2039654 (S.D.N.Y. May 14, 2014),
   *remanded on other grounds,* 597 F. App'x 27 (2d Cir. 2015)........................16

*NewLead Holdings Ltd. v. Ironridge Glob. IV Ltd.,*
   No. 14 Civ. 03945 (WHP), 2014 WL 2619588 (S.D.N.Y. June 11, 2014) ...........16, 17

*Porina v. Marward Shipping Co., Ltd.,*
   521 F.3d 122 (2d Cir. 2008)...............................................................................7

*Ray Legal Consulting Grp. v. DiJoseph,*
   37 F. Supp. 3d 704 (S.D.N.Y. 2014).................................................................15

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,*
   450 F.3d 100 (2d Cir. 2006).............................................................................17

*Thome v. Alexander & Louisa Calder Found.,*
   890 N.Y.S.2d 16 (1st Dep't 2009) ...................................................................14

*Walden v. Fiore,*
   134 S. Ct. 1115 (2014).............................................................................*passim*

*Wilder v. News Corp.,*
   No. 11 Civ. 4947 (PGG), 2015 WL 5853763 (S.D.N.Y. Oct. 7, 2016)...............15

*Wilson v. Dantas,*
   746 F.3d 530 (2d Cir. 2014).............................................................................15

**STATUTES**

N.Y. C.P.L.R. § 302(a)(1)......................................................................................16

Defendants Stream TV Networks, Inc. ("Stream TV"), Mathu Rajan, Walther Roelen, Bart Barenbrug, and Hans Zuidema[1] ("Defendants"), by and through their undersigned counsel, move to dismiss the complaint (the "Complaint") in the above-entitled action captioned *Rembrandt 3D Holding LTD. v. Stream TV Network, Inc., et al.*, in the United States District Court for the Southern District of New York.  Defendants' motion (the "Motion") is grounded in Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

This dispute arises from a Mutual Non-Disclosure and Confidentiality Agreement (the "Agreement") entered into in 2010 between Stream TV and Rembrandt 3D Holdings, Ltd. ("Rembrandt"), by its predecessor in interest, 3D Fusion Corp.  The Agreement was executed to promote the exchange of specific information between the parties to the Agreement concerning "glasses-free" three-dimensional ("3D") television.   (*See* Complaint Ex. 2, at § 1.1 & Addendum.)  The Agreement, which is attached as an exhibit to the Complaint, details the information to be exchanged and specifies the acceptable uses thereof.  Although the Complaint goes to great lengths to portray the parties as business partners engaged in a prolonged and collaborative effort to bring glasses-free 3D television to the market, in reality, the parties merely engaged in initial discussions to determine whether such collaboration was worthwhile.  (*See* Complaint Ex. 2, at Addendum.)  It was not, and the parties went their separate ways as evidenced by the Complaint's lack of any allegations of interaction between Stream TV and Plaintiff outside of a two-month period in 2010.  (*See* Complaint ¶¶ 46, 49.)

Years later, Stream TV succeeded in its glasses-free 3D television endeavors.  The Company is now able to create a far more realistic 3D viewing experience than other

---

[1] The Complaint also identifies Raja Rajan and Peter Roelen as Defendants but, as of the date of this filing, neither individual has been properly served with the Summons and Complaint.

technologies.  Mr. Blumenthal apparently discovered Stream TV's success at an industry trade conference in Las Vegas in 2012, and then filed this suit.  (Complaint ¶ 49.)  Rembrandt now asserts claims against Stream TV for equitable and legal relief for alleged violations of the Agreement, civil conspiracy to breach the Agreement, and seeks $500 million in damages.

In addition to the claims against Stream TV, Rembrandt asserts claims against several individual defendants in their personal capacities.  Specifically, Rembrandt sued Mathu Rajan and Raja Rajan (the "Rajans"), the CEO and COO/General Counsel of Stream TV, respectively.[2] Stream TV also brought suit against Walther Roelen, Bart Barenbrug, Peter Roelen, and Hans Zuidema  (the "Dutch Defendants," and together with the Rajans, the "Individual Defendants"). Each one of the Dutch Defendants resides in the Netherlands and works for a Dutch subsidiary of Stream TV called SeeCubic B.V.  Not one of them is a party to the Agreement and, as such, not one of them can be liable for any breach of the Agreement.  Rembrandt claims, nonetheless, that the Individual Defendants violated certain other unidentified nondisclosure agreements ("NDA") allegedly entered into between themselves and Rembrandt's predecessor corporate entities. Tellingly, Plaintiff attached to the Complaint a copy of the Agreement between 3D Fusion Corp. and Stream TV, but failed to attach any contract between themselves and the Individual Defendants.

Rembrandt's claims lack any merit because (1) Defendant Stream TV never breached the Agreement, (2) the Individual Defendants are not parties to the Agreement and cannot be held personally liable for a breach, (3) no conspiracy claim exists as a matter of New York law, (4) any other NDAs at issue are not alleged with the specificity required to maintain a claim, and (5) this Court does not have personal jurisdiction over the Dutch Defendants.  To be sure, this

---

[2] The Complaint mistakenly refers to Raja Rajan and Mathu Rajan as the CEO and COO, respectively. (Complaint ¶¶ 4-5.)

case is little more than a "shakedown" of Stream TV by Plaintiff, in response to Stream TV's success in creating a workable glasses-free 3D TV system and bringing it to market. Accordingly, Defendants move to dismiss the Complaint.

## SUMMARY OF ALLEGATIONS

### A.    The Parties and Stephen Blumenthal

Plaintiff Rembrandt 3D Holding, Ltd. is a Nevis Corporation with its principal place of business in Nevis, West Indies.  (*See* Complaint ¶ 2.)  Rembrandt is the successor in interest to 3D Fusion Corp., the parent company of 3D Fusion EU, Ltd. and 3D Fusion Holdings Ltd., one of two parties to the Agreement. (*See* Complaint ¶¶ 2, 28-29.) Non-Party Stephen Blumenthal was the president and founder of 3D Fusion Corp. and allegedly worked to develop glasses-free 3D TV for many years. (Complaint ¶¶ 1, 12, 14-20.)

Stream TV is a successful company working to bring glasses-free 3D television to market for viewers on a range of viewing platforms.  Defendant Mathu Rajan is the Founder and Chief Executive Officer of Stream TV and executed the Agreement with 3D Fusion Corp. on behalf of Stream TV.  (*See* Complaint, ¶ 5 & Ex. 2.)  Defendant Raja Rajan serves as Stream TV's Chief Operating Officer and General Counsel.  (*See* Complaint ¶ 4.)  Neither Mathu Rajan nor Raja Rajan entered into the Agreement in his individual capacity. (*See* Complaint Ex. 2.)

Defendants Walther Roelen, Bart Barenbrug, Petera Roelen, and Hans Zuidema are residents of the Netherlands.  (Complaint ¶¶ 6-9.)  The Dutch Defendants are current employees of SeeCubic B.V., a subsidiary of Stream TV, and have never been formal employees of 3D Fusion Corp. or its subsidiaries. (*See id.*; Declaration of Walther Roelen ("Roelen Decl."), dated February 5, 2017, ¶ 4 (ECF No. 4); Declaration of Bart Barenbrug ("Barenbrug Decl."), dated February 6, 2017, ¶¶ 4, 7 (ECF No. 6); Declaration of Hans Zuidema ("Zuidema Decl."), ¶¶ 4, 6 (ECF No. 5)).  As set forth in their individual declarations and described further below, each of

the Dutch Defendants properly served here have little to no contacts with New York in their dealings with either Rembrandt or its predecessors.

### B.    Substantive Allegations

In or around 2000, the global electronics company Royal Philips Electronics ("Philips") began working on glasses-free 3D TV.  (*See* Complaint ¶ 10.)  Philips ultimately abandoned this venture in 2009.   Mr. Blumenthal was willing to license Philips's abandoned technology, however, and did so via a company called 3D Fusion Corp.  (*See* Complaint ¶ 27.)  Under the umbrella of 3D Fusion Corp., non-party Stephen Blumenthal allegedly began his own work on the glasses-free 3D TV concept with the tools licensed from Philips.  (Complaint ¶ 12.)

3D Fusion Corp. contacted former employees of the Philips project as part of its creation of a new subsidiary, 3D Fusion Dutch BV.  (Complaint ¶ 24.)  According to the Complaint, 3D Fusion Corp. also arranged a *non-exclusive* license to continue using the Philips's technology as it attempted to develop its own glasses-free 3D TV.  (Complaint ¶ 27.)  Although some former members of the Philips team assisted in the creation of 3D Fusion EU, B.V., the Complaint makes no allegation that any of the Dutch Defendants operated under a formal employment contract with the company.  In fact, the Complaint makes no mention of Defendant Zuidema by name in any of the background it provides.

In the first half of 2010, Mr. Blumenthal met with the Rajans who themselves were engaged in the glasses-free 3D TV market.  (Complaint ¶¶ 40-43.)  According to the Complaint, 3D Fusion Corp. and the Rajans discussed a collaborative development effort during which details of the 3D Fusion Corp. project were disclosed to the Rajans.  (Complaint ¶ 43-46.)  In or about June of 2010, 3D Fusion Corp. and Defendant Stream TV Network entered into the Agreement governing the use of specified confidential information. (Complaint ¶ 44 & Ex. 2.)

The Complaint alleges that "Blumenthal, the Rajans, Roelen, and Barenbrug" worked collaboratively "under NDA, employment agreements, and their signed MOU Terms Sheet," but does not include any details as to the execution of NDAs or employment agreements and no such contracts, other that the Agreement between Stream TV and 3D Fusion Corp, are attached. (Complaint ¶ 45.)  The Agreement that is attached to the Complaint is between two corporate entities, Stream TV and 3D Fusion Corp, not the Individual Defendants.  (*See* Complaint, Ex. 2.)

In August 2010, Mr. Blumenthal and Defendant Walther Roelen allegedly met with researchers at Corning to discuss glasses-free 3D TV systems.  (Complaint ¶ 37.)  Although the Complaint claims that Roelen signed a NDA before that meeting that "inure[d] to the benefit of 3D Fusion and Corning," that NDA is neither attached to the Complaint nor are any additional details of its terms provided.  (Complaint, ¶ 39.)

The Complaint makes no mention as to the circumstances surrounding the result of 3D Fusion Corp.'s research nor does it reveal how Blumenthal, the Rajans, Roelen, Zuidema, and Barenbrug parted ways.  Instead the Complaint jumps from October 10, 2010 – a few months after the parties initially met – to two years later in January of 2012, when Stream TV's team, including former employees of Philips, was seen marketing its developed glasses-free 3D TV at a consumer electronics show in Las Vegas, Nevada.  (Complaint ¶¶ 46, 49.)

C.     **The Agreement**

The Agreement between Stream TV and 3D Fusion Corp. describes a *potential* collaboration between the parties that restricts the use of "Confidential Information" to "[t]he pursuit, evaluation, and/or feasibility assessment of a potential or actual business relationship, and/or the consummation of a transaction between Parties."   (Complaint, Ex. 2, § 1.1.) "Confidential Information" is defined in the Agreement as:

Any and all non-public technical and non-technical information provided by the Disclosing Party to the Recipient, whether conveyed verbally, in writing, electronically or by any other means, including but not limited to (i) patent and patent applications; (ii) trade secrets; and (iii) Derivative Materials, proprietary information including, but not limited to, ideas, sketches, techniques, drawings, works of authorship. models, inventions, know-how, processes, apparatuses, equipment, algorithms, Software programs, Source Code, Software source documents, and formulae related to the current, future and proposed products and services of each of the Parties, and including, without limitation, their respective information concerning business strategies, research, experimental work, development, design details and specifications, engineering, financial information, procurement requirements, purchasing, manufacturing, client and customer lists, investors, employees, business and contractual relationships, business forecasts, sales, merchandising, marketing plans and information the Disclosing Party provides regarding itself or third parties. Confidential Information also includes, but is not limited to any and all information disclosed by the Disclosing Party to the Recipient that is marked "confidential" or "proprietary."

(Complaint Exhibit 2, § 1.2.)   "Derivative Material," which the Complaint's paragraph 63 summarily claims to encompass "all the products being offered for sale, use, or licensing" by Stream TV, is narrowly defined in the Agreement as material that:

May or may not consist of business related documents, computer program Source Code as determined solely by the Disclosing Party from time to time, and any written or computer based materials or instructions, including but not limited to, Documentation, computer or code or information, manuals or memos in any format whatsoever, system performance specifications or information, or system security measures or information provided from the Disclosing Party to the Recipient.

(Complaint, Ex. 2, at §1.3.)

### D.   <u>Procedural History</u>

Plaintiff brought suit in the Supreme Court of New York, County of New York on September 27, 2016, by filing a Summons and Notice solely against Stream TV. Plaintiff never served this Summons on the Defendant Stream TV or any of the Individual Defendants now named here. On January 6, 2017, Plaintiff filed suit against all Defendants. Plaintiff served Stream TV with service at its corporate headquarters, and then served Mathu Rajan, Walther

Roelen, Bart Barenbrug, and Hans Zuedema at an industry trade conference in Las Vegas on January 5, 2017.   All properly served Defendants timely removed the suit to this Court on February 6, 2017.

## LEGAL STANDARD

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Determining whether a complaint states a plausible claim for relief under Rule 12(b)(6) is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief.  *Id*. at 679 (internal citation omitted).  While the court must always accept the truth of a complaint's factual allegations, that principle "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

In addition, on a motion to dismiss for lack of personal jurisdiction, the court may consider "materials outside the pleadings, including affidavits and other written materials." *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314 (S.D.N.Y. 2015) (quoting *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)); *see Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 126 (2d Cir. 2008).

## ARGUMENT

### ALL CLAIMS AGAINST THE DEFENDANTS SHOULD BE DISMISSED

The Complaint should be dismissed because it epitomizes the "unadorned, the-defendant-

unlawfully-harmed-me accusation" disallowed by the *Iqbal* Court. 556 U.S. at 678.   The Complaint, which sounds primarily in breach of contract, fails even to properly allege the existence of certain contracts which it nonetheless claims were breached. Nor does it provide any relevant terms of those alleged contracts, and it fails to explain how any of the actions taken by Defendants breached those unspecified terms.   Instead, the Complaint asks the Court to infer that, because two companies in the specialized field of glasses-free 3D television[3] had crossed paths in the past, the subsequent success of one must have relied on that previous interaction to the detriment of the other.   Such bald allegations, with no factual basis, present no claim and are certainly not sufficient to "nudge [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In addition, Plaintiff does not and cannot establish this Court's personal jurisdiction over the Dutch Defendants.   In order to do this, Plaintiff must show that jurisdiction is proper under the law of the state in which the court sits and that the assertion of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.   *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014); *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014).   The Complaint is notably devoid of any such jurisdictional allegations relating to the Dutch Defendants, who should, therefore, be dismissed from this suit for want of personal jurisdiction. *See Madison Capital Mkts., LLC v. Starneth Europe B.V.*, No. Civ. 07213 (RWS), 2016 WL 4484251, at *8 (S.D.N.Y. Aug. 23, 2016) (dismissing complaint for lack of personal jurisdiction where, "Plaintiff fail[ed] to allege any facts to support that Corporate Defendants purposefully availed themselves of the New York forum or had reason to

---

[3] Taken as a whole, the allegations in the Complaint indicate that the field of glasses-free 3D television is quite small.  Not only are the Dutch Defendants present employees of Stream TV working on glasses-free 3D TV, they formerly did work for Fusion 3D, and before that for Phillips. (Complaint ¶ 34.)

expect that their actions would have direct consequences in New York.")

**I.   The Complaint Fails to State a Proper Claim Against Any Of The Defendants And Should Be Dismissed.**

The Complaint asserts five counts: (i) two counts for declaratory judgment related to breach of contract; (ii) one count for breach of contract; (iii) one count for conspiracy to breach a contract; and (iv) one count for breach of the duty "not to pirate."  Notably, despite alluding to several NDAs or other contracts signed by the Defendants, the Complaint fails to provide any of the specific details regarding their terms, duration, or the parties thereto.  This is insufficient to even establish that an enforceable contract *existed* between the Plaintiff and any of the Individual Defendants, much less to establish a breach. *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009) ("To show that an enforceable contract existed, the claimant must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and that the party to be bound assented to the contract.")

Indeed, the Complaint only properly pleads the existence of a single contract – the Agreement – and none of the Individual Defendants were parties to that Agreement.  *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103-04 (2d Cir. 1985) (non-party not liable for breach of contract). As such, the Complaint should be summarily dismissed as to all Individual Defendants.  Finally, because the Complaint fails to properly plead a breach of the Agreement by Stream TV, the only Defendant party to it, the Complaint should simply be dismissed in its entirety.

**A.   Counts I and III  Should Be Dismissed Because None Of The Individual Defendants Signed NDAs In Their Personal Capacity.**

Plaintiff's Counts I and III set forth alleged claims for breach of contract and declaratory relief based on a theory of a breach of contract.  To state a claim for breach of contract, a party

must allege "(1) the existence of an agreement, (2) performance of the contract by the plaintiff, (3) breach of the agreement by the defendant, and (4) damages." *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 529 (S.D.N.Y. 2007).  Here, however, the Complaint consists of little more than legal conclusions concerning alleged contractual breaches and fails to provide the Defendants with any of the facts necessary to "identify the transaction and indicate the theory of redress." *Guggenheimer v. Ginzburg*, 401 N.Y.S.2d 182, 185-86 (1977).

### *1.      The Dutch Defendants*

As to the Dutch Defendants, the Complaint merely alleges that (i) information was disclosed by Rembrandt or its predecessor "pursuant to the Confidentiality Agreements," (Complaint ¶ 23); (ii) "a number of former employees" of Plaintiff's predecessor signed "Nondisclosure Agreements," (Complaint   ¶ 34); (iii) Defendant Roelen violated "his agreement," (Complaint ¶ 38); (iv) Blumenthal, the Rajans, Roelen and Barenburg "worked collaboratively . . . under NDA, employment agreements, and their signed MOU Terms Sheet," (Complaint ¶ 45); and (v) "[a]ll employees or other participants were required to execute Nondisclosure Agreements."  (Complaint ¶ 48.)

Nowhere in the Complaint, however, does Plaintiff allege that Roelen, Barenbrug, and Zuidema, on the one hand, and any entity under Rembrandt's control, on the other hand, ever actually consummated a NDA or even what the relevant terms of such an NDA might have been. Nor does Plaintiff attach any such agreement to its Complaint – despite attaching two other exhibits.  Even assuming Rembrandt had produced these documents (which Defendants have requested since this suit was filed and Plaintiff has failed to provide), there is no allegation that the purported contracts remain in force, what their terms were, or that they may now be enforced by Rembrandt.  Without providing this basic information, the Complaint fails to even establish the existence of an enforceable contract between Plaintiff and the Dutch Defendants and should

be dismissed. *Fuji Photo Film U.S.A., Inc.*, 669 F. Supp. 2d at 416. (dismissing counterclaim where "Defendants fail[ed] to allege any facts surrounding the formation of the contract and fail to point to the specific terms of the contract that [Plaintiff] breached.").

### 2.    The Rajans

The Complaint fails to provide any factual foundation for its allegations that the Rajans personally breached any contract with Plaintiff and, therefore, the Rajans are not personally liable under the Agreement between Stream TV and Plaintiff.   Under New York law, an individual who signs an agreement on behalf of a disclosed principal will not be personally bound "unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991); *see also Georgia Malone & Co. v. Ralph Rieder*, 926 N.Y.S.2d 494, 497 (1st Dep't 2011), *aff'd sub nom. Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511 (2012) (Corporate officer for real estate company could not be held liable for breach of a confidentiality agreement where officer had been listed only as "contact" and corporation had been listed as "company" on signature block of agreement.)

In its Complaint, Plaintiff alleges that "[t]he Rajans, acting as agents for Stream, and individually, executed Non-Disclosure Agreements in June of 2010 . . . " (Complaint ¶ 44.)  The Agreement, however, indicates that only Mathu Rajan signed the Agreement and only in his capacity as CEO of Stream TV. (*See* Complaint, Ex. 2.)  The only mention of a contract between Plaintiff and the Rajans themselves is in paragraph 43 of the Complaint, which alleges that the Rajans "signed the NDA, and began contract negotiations…"   There is no further mention of these alleged contracts, their terms, the parties to them, or their duration.   As with the Dutch Defendants, no contract signed by either of the Rajans in their individual capacities is attached to the Complaint.   Instead, the Complaint makes only bald accusations that the Rajans have

- 11 -

somehow violated personal contractual obligations that are never specified.  Without providing any factual underpinning for the contention that the Rajans signed individual NDAs or that the terms of those alleged NDAs were breached, the Complaint fails to meet even the basic notice pleading standard required by federal courts and Counts I and III should be dismissed.  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (upholding the dismissal of a breach of contract claim because, "[t]he complaint only offers conclusory allegations without pleading the pertinent terms of the purported agreement. We are left to speculate as to the parties involved and the conditions under which this alleged appraisal contract was formed. Consequently, by failing to plead the salient terms of a valid and binding contract, Mandarin cannot show that the contract was  intended for its immediate benefit.")

### B.     Counts I, II, III, and V Against Stream TV Should Be Dismissed Because They Provide No Facts To Support the Contention That Stream TV Breached Its Obligations Under The Agreement.

Plaintiff's contention that Stream TV breached its obligations under the Agreement seems premised on the assumption that, because Stream TV was successful in bringing glasses-free 3D TV to market and because Stream TV's employees had previous interactions with 3D Fusion Corp. in 2010, that Stream TV must have used Plaintiff's intellectual property and trade secrets.  This assumption is unfounded.  It is not at all surprising, given the specialized field of glasses-free 3D television, that one company's employees might have interacted with others in the market at one time.  It does not follow, however, that any subsequent advancement made in the field is attributable to the use of another's trade secret information.

In fact, the only statement offered by Plaintiff in support of the contention that Stream TV breached its Agreement with Rembrandt is that Stream TV was seen marketing glasses-free TV in 2012 at a trade show in Las Vegas.  (Complaint ¶ 49.)   Yet, in the same Complaint, Plaintiff admits that Stream TV was operating in the same market – as a competitor – when the

two parties met two years prior *and* that "others in the industry were also working on the same issue" even earlier than 2010.   (Complaint at ¶¶ 18, 43.) The Complaint makes no effort to specify how Stream TV's products fit within the Agreement's definition of "Derivative Material" and contains no other facts to suggest that Stream TV improperly used any of Rembrandt's technology except to make the wholly conclusory statement in paragraph 63 that, "all the products being offered for sale, use, or licensing . . . are derivative of the Trade Secrets and Intellectual Property conveyed to Stream." (Complaint ¶ 63.)

Again, simply because Rembrandt and Stream TV – competitors in a small and specialized field – briefly considered a collaborative effort and discussed their work at one point, does not mean that any subsequent development Stream TV achieved somehow misused Rembrandt's confidential company secrets.   It is, of course, equally likely that Stream TV developed its technology independently of 3D Fusion Corp.'s (Plaintiff's predecessor in interest) input, which is what, in fact, happened.   Plaintiff offers no facts that refute this intuitive and innocent explanation and thus fails to nudge its claim of wrongdoing from conceivable to plausible.

Furthermore, despite the Agreement's specificity as to the types of information considered confidential and the acceptable uses thereof, the Complaint makes no attempt to specify what information was allegedly revealed or misused.   In fact, the majority of Counts I, II, III, and IV focus on the purported employment of the Dutch Defendants by Stream TV, an act not prohibited by any term of the Agreement.   For example, Count II merely states that Stream TV was "given access to proprietary trade secrets and methods" but makes no claim as to what Stream TV is alleged to have done with those secrets that would violate the terms of the Agreement. (Complaint ¶ 62.)

- 13 -

Finally, Count V of the Complaint should be dismissed because a claim for "breach of duty not to pirate" is not a recognized claim under New York law (or any law). Indeed, the Complaint fails to even define what is meant by the phrase "pirate," using it to describe both the hiring of the Dutch Defendants and the alleged use of contractual terms similar to those negotiated by Plaintiff. The Complaint provides no basis for such a duty and makes no mention of relevant non-competition clauses in any employment agreements or any other contractual terms that Stream TV's employment of these individuals would violate.

Likewise, the Agreement between Stream TV and Rembrandt does not contain any provision prohibiting the hiring of the Dutch Defendants nor does it contain any provision that might be interpreted as a "duty not to pirate." Where the Plaintiff fails to define its claim or to provide any basis for the duty it alleges was breached, Count V of the Complaint should be dismissed. *Thome v. Alexander & Louisa Calder Found.*, 890 N.Y.S.2d 16, 30 (1st Dep't 2009) (To the extent plaintiff relied on the assertion that the individual defendants had a fiduciary duty to the foundation, there was no basis for a claim that any of the defendants owed a fiduciary duty to plaintiff and, absent that, plaintiff had no cause of action for the alleged breach of such a duty.); *Abercrombie v. College*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006) ("[i]n order to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship.") (quoting *Diamond Phoenix Corp. v. Small*, No. 05 Civ. 00079 (DMC), 2005 WL 1530264, at *6 (D. Me. June 28, 2005)).

### C.     Count IV Is Not A Recognized Cause of Action Under New York Law and Must Be Dismissed.

New York law does not recognize an independent cause of action for civil conspiracy.

*See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006); *Anderson News L.L.C. v. Am. Media, Inc.*, 123 F. Supp. 3d 478, 510-11 (S.D.N.Y. 2015). Instead, a plaintiff alleging civil conspiracy must establish an "independent actionable tort *and* four additional elements: (1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) a party's intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Lewis v. Rosenfeld*, 138 F. Supp. 2d 466, 479 (S.D.N.Y. 2001) (emphasis added).

Here, Plaintiff does not allege any "independent actionable tort" against *any* of the Defendants. Rather, Plaintiff's claim is for conspiracy to breach a contract. Accordingly, Count IV must be dismissed in its entirety. *See Wilson v. Dantas*, 746 F.3d 530, 537 n.4 (2d Cir. 2014); *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 723 (S.D.N.Y. 2014); *see also Madison Capital Mkts., LLC,* 2016 WL 4484251 at *15 ("Because a claim for civil conspiracy is predicated on an 'independent actionable tort,' a civil conspiracy claim must be dismissed when, as here, it is not grounded in a viable claim of tortious conduct.")

## II.   The Complaint Fails to Establish Personal Jurisdiction Over The Dutch Defendants.

### A.   No General Jurisdiction Exists Over the Dutch Defendants.

Plaintiff cannot establish personal jurisdiction over the Dutch Defendants through general jurisdiction. General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden*, 134 S. Ct. at 1121 n.6; *Wilder v. News Corp.*, No. 11 Civ. 04947 (PGG), 2015 WL 5853763, at *5 (S.D.N.Y. Oct. 7, 2015) (general jurisdiction is "based on the defendant's general business contacts with the forum").

As the Supreme Court recently made clear, a court can assert general jurisdiction over out-of-state corporations only "when their affiliations with the State are so 'continuous and

- 15 -

systematic' as to render them essentially at home in the forum State." *Daimler*, 134 S. Ct. at 754. Finding general jurisdiction over a non-resident individual defendant is equally difficult and requires a showing of "exceptional" contacts with the forum state. *Id.* at 761 n.19; *see Epstein v. Univ. of the S. Pac.*, No. 14 Civ. 06012 (AT), 2015 WL 4002344, at *3 (S.D.N.Y. June 19, 2015) (no general jurisdiction over Fijian citizen and resident with no presence in New York); *Meyer v. Bd. of Regents of Univ. of Okla.*, No. 13 Civ. 3128 (CM), 2014 WL 2039654, at *2-3 (S.D.N.Y. May 14, 2014) (no general jurisdiction over university president residing and working in Oklahoma), *remanded on other grounds*, 597 F. App'x 27 (2d Cir. 2015).

There are no continuous and systematic contacts with New York here, much less "exceptional" ones. The Dutch Defendants all reside in the Netherlands. (Complaint ¶¶ 6-9.) None of the Dutch Defendants maintains an office in New York or owns real property in the state.[4] Plaintiff has not alleged that any of these individuals has the type of exceptionally substantial and continuous contacts that would be necessary to support a finding of general jurisdiction.

**B.      No Specific Jurisdiction Exists Over the Dutch Defendants.**

Additionally, New York's long arm statute does not allow for the exercise of personal jurisdiction over the Dutch Defendants for any of Plaintiff's claims. Indeed, the New York long-arm statute only permits the exercise of jurisdiction if a nonresident defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1); *NewLead Holdings Ltd. v. Ironridge Glob. IV Ltd.*, No. 14 Civ. 03945 (WHP), 2014 WL 2619588, at *5 (S.D.N.Y. June 11, 2014) (personal jurisdiction under C.P.L.R. § 302(a)(1) requires "(1) [t]he defendant must have transacted business within the state; and (2)

---

[4] (*See* Roelen Decl. ¶ 3; Barenbrug Decl. ¶ 3; Zuidema Decl. ¶ 3.)

the claim asserted must arise from that business activity" (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).  "A defendant transacts business in New York when it 'purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'"  *NewLead Holdings Ltd.*, 2014 WL 2619588, at *5 (citation omitted).

Moreover, personal jurisdiction over the Dutch Defendants must also comport with the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *See Walden*, 134 S. Ct. at 1121; *Daimler*, 134 S. Ct. at 753.  Specific jurisdiction turns on whether "the defendant has 'purposefully directed' his activities at . . . the forum and the litigation . . . 'arises out of or relate[s] to' those activities.  *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 136 (2d Cir. 2014) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  In evaluating whether specific jurisdiction has been established, a court "focuses on 'the relationship among the defendant, the forum, and the litigation'" to determine whether "the defendant's suit-related conduct . . . [creates] a substantial connection with the forum state." *Walden*, 134 S. Ct. at 1121.  The Supreme Court recently reemphasized that the relationship between the defendant's conduct and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum . . . [and the] 'minimum contacts' analysis looks to the defendant's contacts with the forum . . . itself, not the defendant's contacts with persons who reside here.'"  *Id.* at 1122.

The Complaint is devoid of *any* allegations concerning jurisdiction over *any* of the Defendants, including, of course, the Dutch Defendants.  It fails to identify any contract between the Dutch Defendants and a New York corporation, or that any injury was caused in New York, an especially unlikely outcome given the Plaintiff is a Nevis corporation with its principal place

- 17 -

of business in Nevis.  The Complaint also fails to identify *any* connections between (i) the Dutch Defendants (or any Defendants, for that matter); (ii) the alleged conduct at issue; and (iii) the New York forum.  Under these circumstances, jurisdiction may not be exercised over the Dutch Defendants in accord with Constitutional Due Process.  *See id.*, at 1121.

The Dutch Defendants have each submitted sworn declarations in support of this motion to dismiss for lack of personal jurisdiction.  These declarations set forth facts related to their affiliation, or lack thereof, with New York:

- Not one of the Dutch Defendants works or lives in New York, maintains a bank account in New York, owns or rents property in New York, or has ever been a party to a lawsuit in New York.[5]

- Not one of the Dutch Defendants transacts any business in New York, or has an on-going contractual relationship with a New York corporation. [6]

- The Dutch Defendants all live and work in the Netherlands, and are employed by a Netherlands company called SeeCubic B.V, which is a Stream TV subsidiary company.[7]

- The Dutch Defendants were not formally employed by 3D Fusion Corp.  While Walther Roelen helped to set up 3D Fusion EU, B.V. in the Netherlands, he was never a formal employee of that Dutch company.[8]

- Not one of the Dutch Defendants entered into a non-disclosure agreement with a New York company, or negotiated an NDA in New York. [9]

- The Dutch Defendants also did not enter into an NDA with the plaintiff or its corporate entities.  The individuals did review *draft* NDAs that were never consummated and involved "3D Fusion, Inc." not 3D Fusion Corp.[10]

---

[5] *See* Roelen Decl. ¶ 3; Barenbrug Decl. ¶ 3; Zuidema Decl., ¶ 3.

[6] *Id.*

[7] *See* Roelen Decl. ¶¶ 2, 4; Barenbrug Decl. ¶¶ 2, 4; Zuidema Decl. ¶¶ 2, 4.

[8] *See* Roelen Decl. ¶ 4; Barenbrug Decl. ¶ 7; Zuidema Decl. ¶ 6.

[9] *See* Roelen Decl. ¶ 4; Barenbrug Decl. ¶ 7; Zuidema Decl. ¶ 6.

[10] *Id.*

- Messrs. Barenbrug and Zuidema never traveled to New York for any business purpose related to "glasses free" three-dimensional television, and did not have any meetings in New York with either the Plaintiff, 3D Fusion Corp., or 3D Fusion EU, B.V.[11]

- On one occasion in 2010 while Mr. Roelen was helping to set up 3D Fusion EU, B.V., he traveled to Corning, New York to meet with representatives from Corning Glass together with Stephen Blumenthal.[12]

Based on the allegations in the Complaint and the facts contained in these sworn declarations, there is no evidence that the Dutch Defendants transacted any business in New York, or caused an injury in New York.  The exercise of jurisdiction would, therefore, violate Due Process.  Accordingly, this Court lacks personal jurisdiction over the Dutch Defendants and the Complaint should be dismissed as to the Dutch Defendants.

## CONCLUSION

For the foregoing reasons, Defendants Stream TV, Mathu Rajan, Walther Roelen, Bart Barenbrug, and Hans Zuidema respectfully request that this Court:

(1) dismiss Defendants Walther Roelen, Bart Barenbrug, and Hans Zuidema from this case with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2) for want of personal jurisdiction;

(2) dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted; and

(3) provide any further relief as the Court deems just and proper.

---

[11] *See* Barenbrug Decl. ¶¶ 5-6; Zuidema Decl. ¶¶ 4-5.

[12] *See* Roelen Decl. ¶ 5.

DATED:  February 13, 2017
           New York, New York

                                         DLA PIPER LLP (US)


                                         By:  /s/ Hugh J. Marbury
                                              Hugh J. Marbury
                                              Megan Shea
                                              Neal F. Kronley
                                              1251 Avenue of the Americas
                                              New York, New York  10020-1104
                                              (212) 335-4500
                                              hugh.marbury@dlapiper.com
                                              megan.shea@dlapiper.com
                                              neal.kronley@dlapiper.com

                                              Attorneys for Defendants