March 19, 2020

*Filed Via ECF*
The Honorable Ronnie Abrams
United States District Court, S.D.N.Y.
40 Foley Square, Room 2203
New York, NY 10007

Re:   Rembrandt 3D Holding Ltd v. Stream TV Network, Inc. et al.; No. 17-CV-882 (RA)
      Parties' Joint Letter on Case Status

Dear Judge Abrams:

The parties jointly submit this letter pursuant to the Order dated March 4, 2020.

**1.     Plaintiff's Status Update and Summary of Settlement Efforts:**

**1.1     Procedural Posture.**  Plaintiff Rembrandt 3D Holding Ltd. ("Rembrandt" or "Plaintiff") is the successor-in-interest to 3DFusion Corp. ("3DFusion"), the original owner of the improved Philip's 3DASD technology (or glasses-free 3D autostereoscopic display technology).  In or about February 2016, Mr. Blumenthal acquired all of the assets of 3DFusion.  In or about December 2016, Mr. Blumenthal assigned all of 3DFusion's assets to Plaintiff.  Soon thereafter, Plaintiff consulted with legal counsel and filed its complaint in the New York State Supreme Court in January 2017.  Defendants removed the state action to this Court and moved to dismiss the complaint.  Plaintiff subsequently moved to amend its complaint (the First Amended Complaint (FAC)), which was unopposed by Defendants and granted by this Court.  Defendants were served with the FAC on June 23, 2017.  Defendants filed a motion to dismiss the FAC, which is now pending.

**1.2     Summary of Settlement Efforts.**  This Court held a hearing on May 11, 2018 in which the parties agreed to mediation by a magistrate judge. [Dkt# 56]  Subsequently, Magistrate Judge Parker ordered the parties to attend a settlement conference in person with counsel on July 18, 2018 (the "First Mediation Conference"). [Dkt# 58] Mr. Raja Rajan attended the First Mediation Conference with Mr. Neal Kronley of DLA Piper.

At the First Mediation Conference, Plaintiff demonstrated the 3DASD technology using the original 3DFusion equipment.  This identical equipment was featured in a news article dated January 25, 2011 published by The Flying Kite Media, a Philadelphia based online magazine (the "2011 News Article"), wherein Defendants showcased 3DFusion's laptop and video content and passed off Plaintiff's technology as their own while referencing a non-existent company in Fremont, California as the source of the technology. (Ex. 1, 2011 News Article entitled "how philly is leading the glasses-free 3d revolution").

After the First Mediation Conference, the parties conducted several in-person settlement conferences at Stream TV offices in Philadelphia with Messrs. Blumenthal, Michaels, and Wallace representing Plaintiff, and Mr. Raja Rajan representing the Defendants.  The parties did not resolve their differences.

On January 11, 2019, Magistrate Judge Parker ordered the parties to attend a second settlement conference in person with counsel on April 9, 2019 (the "Second Mediation Conference"). [Dkt# 67]

Honorable Ronnie Abrams
March 19, 2020
Page 2 of 4

Prior to the Second Mediation Conference, on April 2, 2019, Mr. Kronley emailed Plaintiff counsel a redlined Term Sheet (the "Redlined Term Sheet") incorporating his comments. (Ex. 2)

In physical attendance at the Second Settlement Conference for the Defendants were: Mr. Shad Stastney (CFO and Director of Stream TV), Mr. John Wellschlager (former counsel to Defendants) and Mr. Neal Kronley (former counsel to Defendants); and attending by telephone were: Messrs. Raja Rajan and Mathu Rajan (in their individual capacities). Attending for the Plaintiff were Mr. Blumenthal (Director of Rembrandt 3D Holding Ltd), Mr. Christopher Michaels (counsel to Plaintiff), and the undersigned Plaintiff counsel.

On April 9, 2019, the Second Settlement Conference commenced at 10 am, after the parties signed the attached Settlement Conference Sign-In Sheet and Confidentiality Agreement. (Ex. 3) While situated in separate rooms, the parties negotiated the various terms in the Redlined Term Sheet through Magistrate Judge Parker. By late afternoon, Mr. Kronley made hand written modifications to the Redlined Term Sheet, and the parties initialed his modified Redlined Term Sheet, which Magistrate Judge Parker also affixed her signature thereto (the "April 9 Term Sheet"). (Ex. 4) Mr. Kronley agreed to draft the final documentation. On June 13, 2019, more than 60 days from the April 9 mediation conference, Plaintiff received a proposal from Defendants' counsel (the "Proposal") that deviated significantly from the April 9 Term Sheet. (Ex. 5) The Proposal removed, among other things, the already agreed upon timing and certainty of the installment payments due Plaintiff under the April 9 Term Sheet.

At the request of Mr. Wellschlager, the parties held a one-day in-person meeting on July 8, 2019. Attending for the Defendants were: Messrs. Shad Stastney (CFO and Director of Stream TV), Mark Coleman (Director of Stream TV), John Wellschlager, and Neal Kronley; and on behalf of Plaintiff: Messrs. Stephen Blumenthal, Neil Wallace, Christopher Michaels, and the undersigned Plaintiff counsel.

At the meeting, Mr. Stastney, who negotiated the April 9 Term Sheet on behalf of Stream TV, alleged that Stream TV has encountered certain financial difficulties. However, Mr. Stasney stated that Stream TV is committed to the economic value of the April 9 Term Sheet.

On July 23, 2019 Mr. Kronley provided Plaintiff with the following documents for settlement of the lawsuit, comprising:

1.      Warrant Agreement (shared May 2, 2019);

2.      Settlement Agreement (shared June 13) (which deviates significantly from the April 9 Term Sheet);

3.      Market Development Agreement (shared July 22);

4.      Side Letter (shared July 22) (which requests a stay of the lawsuit); and

5.      Supply Agreement (shared July 23) (or "Terms of Purchase" agreement setting forth the terms of Stream's supply of TV units).

Mr. Kronley further stated: "To ensure we are on the same page from our July 8 meeting and subsequent discussions, the parties intend to enter into the Market Development Agreement, Side Letter, and Supply Agreement, and to finalize but not execute the Settlement Agreement (the Warrant Agreement being an attachment to same), with the timing and allocation of payments and product being set at a later date. The parties also intend for the products and payment

Honorable Ronnie Abrams
March 19, 2020
Page 3 of 4

schedule to reflect the net present value of the deal discussed during the April 9 meeting and memorialized in the non-binding term sheet, reduced by the terms of the Market Development Agreement."

On August 19, 2019, Mr. Kronley emailed Magistrate Judge Parker and the undersigned Plaintiff counsel stating: "As we discussed with Rembrandt during our July 8 meeting and since that time, the Stream parties remain committed to the net present value of the non-binding Term Sheet dated April 9, reduced by any payments made under the shorter term development agreement."

On September 18, 2019, Mr. Kronley emailed Plaintiff a Memorandum of Understanding ("MOU"), a Tolling Agreement, and a Stipulation of Dismissal Without Prejudice.  On September 20, Plaintiff objected to, among other things, the "Entire Agreement" clause in the MOU because it would replace any existing agreement(s) between the Parties with respect to the dispute, i.e., the subject matter, before the Court, including the April 9 Term Sheet.

Negotiations between the parties broke off soon thereafter.

**1.3     Enforcement of the April 9 Term Sheet.**  In light of the ever-shifting positions of the Defendants during the yearlong settlement negotiations (as outlined above), further negotiations may only serve the purpose of prolonging this lawsuit indefinitely.  Accordingly, for judicial economy, Plaintiff urges this Court to enforce the already-agreed settlement terms memorialized in the April 9 Term Sheet, which is enforceable pursuant to Settlement Conference Sign-In Sheet and Confidentiality Agreement, among other reasons.

Today, Magistrate Judge Parker ordered that Plaintiff shall file a motion to enforce the April 9 Term Sheet by April 20, 2020, that Defendants shall file their opposition by May 20, 2020, and that Plaintiff shall file its Reply by June 4, 2020.

**2.      Defendants' Position:**

We are new counsel for the Defendants in this matter.  We appeared on March 11, 2020.  We understand the Company is undergoing financial restructuring currently and as a result I was brought in as new legal counsel.  Also, you should note Mr. Shad Stastney who was the Company representative at the April 9, 2019 settlement conference is no longer affiliated with the Company in any way.

On or about Saturday, February 15, 2020, one of the Defendants, speaking on behalf of himself, Mr. M. Raman and Stream TV, (Raja Rajan) had discussions with the Plaintiff about settlement terms.  They were to talk again regarding settlement the next day, but the Plaintiff cancelled that proposed settlement call.  The Plaintiff only indicated that it was cancelling the settlement call and it was going to enforce the April 9, 2019 Term Sheet by Motion that Shad Stastney signed allegedly on behalf of the Company.  Plaintiff wrote specifically in an email that *"Raja, In reviewing your points, it does not seem that there is any need for us to have a call. There is no basis for a settlement, we are proceeding with our motion to enforce the April 9th Term Sheet."* We note that the term sheet was non-binding and thus not enforceable.  Furthermore, prior to this cancellation, the parties had been negotiating to replace the proposed points with a deal that had been in active discussions between the parties in October and November.

Defendants' position continues to be that if Plaintiff can put down in writing the specifics for what they need for an amicable resolution, then continued settlement talks may be fruitful.

Honorable Ronnie Abrams
March 19, 2020
Page 4 of 4

However, legal posturing by either party, including seeking to enforce a non-binding term sheet is not likely to reach an amicable settlement.

The undersigned also notes that our firm has not had a chance to substantially review the litigation. Given our new appearance and the current situation with the coronavirus emergency declared at the Federal, State and Local levels, we need an extension of all due dates in this case. Our firm has 2 attorneys in the New York Office who are admitted to the SDNY. One of them, myself, has children out of school right now indefinitely. Ms. Tarpanova is in the same situation. We therefore request a 2-month extension of all due dates in this case and that such requested extension be taken into account in any future schedule set in this case. In addition, Defendants' are hampered by the same situation.

The undersigned and the Defendants look forward to further instruction from the Court.

**3.** **Conclusion.** The parties look forward to further discussing this matter with Your Honor at the status conference scheduled for March 23, 2020, at 1:30 pm. We thank the Court for its time and consideration.

Respectfully submitted,

| | |
|---|---|
| By: | By: |
| Henry Cittone | Chi Eng |
| Cittone, Demers & Arneri LLP | Eng Law Firm |
| hcittone@cdalawllp.com | chi@englawfirm.com |
| 11 Broadway, Suite 615 | ENG LAW FIRM |
| New York, NY 10004 | One Gateway Center, Suite 2600 |
| Telephone: 347-623-3751 | Newark, NJ 07102 |
| Attorneys for Defendants | Telephone: 646.770.2347 |
| | Facsimile: 646.568.7231 |
| | Counsel for Rembrandt 3D Holding Ltd |

Enc.   Ex. 1, 2011 News Article

Ex. 2, Redlined Term Sheet

Ex. 3, Settlement Conference Sign-In Sheet and Confidentiality Agreement

Ex. 4, April 9 Term Sheet

Ex. 5, Proposal