**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| REMBRANDT 3D HOLDING LTD |
| |
| Plaintiffs, |
| v. |
| |
| STREAM TV NETWORK, INC., RAJA RAJAN MATHU RAJAN, WALTHER ROELEN, BART BARENBURG, PETER ROELEN, and HANS ZUIDEMA |
| |
| Defendants. |

**No. 1:17 cv 0882(RA)**

**ECF Case**

**DEFENDANTS' STREAM TV NETWORK, INC., RAJA RAJAN AND MATHU RAJAN**
**MEMORANDUM OF LAW IN OPPOSITION TO**
<u>**PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT TERM SHEET**</u>

CITTONE DEMERS & ARNERI LLP
Henry J. Cittone
Antoaneta V. Tarpanova
11 Broadway, Suite 615
New York, NY 10004
Tel. 212-624-0244
Email: hcittone@cdalawllp.com

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION .............................................................................................. 1

THE PERTINENT FACTS.................................................................................. 1

ARGUMENT ................................................................................................... 1

   I.   Applicable Legal Standard to determine whether an agreement is binding ....................... **3**

      a.   The language of the agreement ................................................................. 4

      b.   There has been no partial performance ....................................................... 8

      c.   Open Terms ........................................................................................ 8

      d.   The type of agreement requires formal writing.............................................. 9

      e.   The context of negotiations .................................................................... 10

   II.  Enforceability Under NY GOB 5-701 ........................................................... 10

   III.  Enforceability Under N.Y. U.C.C.............................................................. 11

   IV.  Delaware law ..................................................................................... 12

CONCLUSION............................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*In re Estate of Perera*, 3 Misc. 2d 1043, 155 N.Y.S.2d 894, 1956 N.Y. Misc. LEXIS 1716 (N.Y. Sur. Ct. 1956) .................................................................................................................... 7

*Adjustrite Systems, Inc. v. GAB Business Services, Inc.,* 145 F.3d 543 (1998) ............................. 3

*Brown V. Cara,* 420 F 3d 148, 154 (2nd Cir. 2005) ...................................................................... 4

*CP III Rincon Towers, Inc. v. Cohen,* 666 Fed. Appx. 46 *; 2016 U.S. App. LEXIS 21269 **; 2016 WL 6989480 (2nd Cir. 2016) ............................................................................................ 7

*HDtracks.com, LLC v. 7digital Grp. PLC*, 2019 U.S. Dist. LEXIS 200898 *; 2019 WL 6170838 (SDNY 2019) ................................................................................................................ 9

*In re Estate of Perera*, 3 Misc. 2d 1043, 155 N.Y.S.2d 894, 1956 N.Y. Misc. LEXIS 1716 (N.Y. Sur. Ct. 1956) .................................................................................................................. 11

*John Hancock Mutual Life Ins. Co. v. Carolina Power and Light Co.*, 717 F.2d 664, 669 n. 8 (2d Cir.1983) ...................................................................................................................... 7

*Main St. Baseball, LLC*, 103 F. Supp. 3d at 259 (NDNY 2015) ................................................... 9

*Mun. Consultants v. Ramapo*, 47 NY 2d 144, 149 (1979) ........................................................... 10

*RG Group, Inc. v. Horn & Hardart Co.*, 751 F. 2d 69, 74 (2d Cir. 1984).................................... 10

*Scheck v. Francis*, 33 A.D.2d 91 *; 305 N.Y.S.2d 217 **; 1969 N.Y. App. Div. LEXIS 2820 (1st Dept. 1969) ................................................................................................... 11

*SIGA Technologies, Inc. v. PharmAthene, Inc.*, 67 A. 3d 330 (Del. Sup. Ct. 2013) ................... 12

*Stonehill Capital Mgmt. LLC v. Bank of the West*, 28 N.Y.3d 439, 448-49 (2016) ..................... 10

*William Higgins & Sons, Inc. v. State of New York, 20 N.Y.2d 425, 231 N.E.2d 285, 284 N.Y.S.2d 697 (1967)* ................................................................................................................. 7

**Statutes**

NY GOB 5-701 ..................................................................................................................... 12

## INTRODUCTION

Defendants, Stream TV Network, Inc. ("Stream TV"), Raja Rajan and Mathu Rajan (collectively, "Defendants"), by an through their counsel, respectfully submit this memorandum in opposition to Plaintiff's Rembrandt 3d Holding Ltd. ("Rembrandt" or "Plaintiff") motion seeking to enforce the parties' non-binding term sheet dated April 9, 2019 (the "Term Sheet") initialed by the parties' attorneys. (**Dkt. No. 90**).

## THE PERTINENT FACTS

This whole controversy stems from events that took place in the approximate 2010 and 2011 time-frame. Steve Blumenthal and his former partner Ilya Sorkin owned a company called 3DFusion Corp. ("3DFusion"). Steve Blumenthal was the President of 3DFusion, and his former partner Ilya Sorkin was the Chief Executive Officer. In an effort to expand 3D Fusion's business, Steve Blumenthal and Ilya Sorkin approached Mathu and Raja Rajan (collectively the "Rajans") and requested their cooperation to raise investment capital. On or about September 28, 2010 3DFusion and Rajans executed an investment term sheet with a "no shop" clause prohibiting 3D Fusion from seeking investments from third parties (the "Investment Agreement") along with a Mutual Non-Disclosure and Confidentiality Agreement (the "NDA"). In spite of the "no shop" clause, however, and in breach of the Investment Agreement, 3DFusion took investment from a third-party investor. (Exhibit A is an email from Ilya Sorkin)[1]. Subsequently, the Rajans sent 3DFusion a proposed termination agreement to formalize the end of the parties' relationship. In

---

[1] In his email Mr. Sorkin states that:
"…Also the company that provided the initial funding was in contact with us prior to September 28th, they came back to us on Dec 30th and have inquired if we were still looking for funding, and closed the deal in two days..".

response, Mr. Sorkin informed the Rajas that as the intended transaction  had never occurred the execution of a "Termination Agreement" officially terminating the parties' relationship was unnecessary. *Id[2]*. As the agreement allegedly never materialized, the parties went their separate ways in January 2011.

3DFusion eventually failed as a going concern despite receiving investments from third parties, while Stream TV was able to develop a glass-free 3D television technology allowing for more realistic viewing experience.

In January 2017 Rembrandt, a company owned by Stephen Blumenfeld, filed its complaint in the New York State Supreme Court as a successor in interest of 3D Fusion alleging breach of the NDA executed in 2010 between Defendant Stream TV Network, Inc. and its predecessor 3D Fusion Corp. The action was subsequently removed to this Court. Plaintiff amended its complaint on June 23, 2017 ("First Amended Complaint") adding three claims or patent infringement against StreamTV and claims for unjust enrichment and promissory estoppel against all Defendants. Defendants moved to dismiss Plaintiff's First Amended Complaint thereafter pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(6). **(Dkt. Nos. 29, 30)**. On August 18, 2017, Plaintiff opposed Defendants' motion to dismiss. **(Dkt No. 35)**. On March 27, 2018 the Court dismissed Plaintiff's three patent infringement claims for improper venue and reserved its judgment as to the state law causes of action. **(Dkt. No. 47)**. Subsequently, the parties agreed to mediation by a magistrate judge and on July 18, 2018 attended a settlement conference before

---

**2** In his email Mr. Sorkin states that: "…I had a chance to run this by our lawyers, they will get back to me tomorrow with official answer. Their preliminary opinion is that there is no need to sign anything. First of all the original agreement was binding only upon signing of the Definitive agreement, which was never even put together. Secondly, the 90 days has expired on Dec 28th, even if we had signed the definitive agreement...

Judge Parker (the "First Mediation Conference"). From July 18, 2018 the parties discussed possible settlement. On April 9, 2019 the parties attended a second mediation conference. At the conference a non-binding Term Sheet memorializing the progress of the parties' negotiations was initialed by Defendants' attorney. Thereafter, the parties continued settlement discussions. On July 8, 2019 the parties attended a meeting, where the parties discussed Stream TV's obstacles in raising capital and the prospects of the funding any final agreement between the parties. On August 19, 2019 Defendants updated the court, with plaintiff's counsel copied, of the status of the negotiations. (**Dkt.No. 90-15**). The parties continued to exchange documents and correspondence thereafter until February 2020 when Plaintiff abruptly ended the negotiations and stated that they it will seek to enforce the April 9, 2018 Term Sheet. (Dkt. No. 90-20).

## ARGUMENT

I.   APPLICABLE LEGAL STANDARD TO PRELIMINARY AGREEMENTS

A preliminary agreement generally does not create a binding contract if the parties contemplate the execution of a formal contract in the future. *Adjustrite Systems, Inc. v. GAB Business Services, Inc.,* 145 F.3d 543, [pin cite] (2d Cir. 1998). The Second Circuit has crafted two limited exceptions to this rule, termed Type I and Type II. Under a "Type I" preliminary agreement, the parties agree "on all points (including whether to be bound) but agree to memorialize their agreement in a more formal document" their preliminary agreement is fully binding. *Id.* Under the Type II preliminary agreement, the parties agree on certain major terms, but leave other terms open for further negotiation. The Type II agreement is binding only to the extent that the parties have an obligation to make a good faith effort to reach a binding agreement. "Finally, however, if the preliminary writing was not intended to be binding on the

parties at all, the writing is a mere proposal, and neither party has an obligation to negotiate further." *Id.* at [pin cite]. The court must determine "whether the parties intended to be bound, and if so, to what extent." *Id.* at [pin cite].

Four factors are considered when determining whether an agreement is a Type I agreement:1) whether there is an expressed reservation of the right not to be bound in the absence of a writing; 2) whether there has been a partial performance of the contract; 3) whether all of the terms of the alleged contract have been agreed upon, and 4) whether the agreement is a type of the contract usually committed to writing. *Brown V. Cara,* 420 F 3d 148, 154 (2nd Cir. 2005).

These factors overlap to a large extent with the factors that courts consider when determining whether an agreement is a Type II preliminary agreement, namely: 1) whether the language of the agreement reveals an intent to be bound; 2) the context of the negotiations; 2) the existence of open terms; 4) whether there has been any partial performance; and 5) whether it is customary to commit the contract to writing. *Id.* at [pin cite].

a.  The language of the agreement

In its first paragraph the Term Sheet explicitly states twice and in bold that it is a non-binding agreement.

Plaintiff does not allege that the Term Sheet was ambiguous but rather that it did not reflect the parties' real intentions. (**Dkt. No. 90-5**). Plaintiff contends that the term "non-binding" found in the preamble of the Term Sheet should not be given its usual meaning, but should rather be interpreted "to mean that they [the parties] desired a more elaborate formalization of the Settlement Sheet ." (**Dkt. No. 90, p**.). Plaintiff also suggests that the parties somehow omitted to remove the "non-binding" qualifier from the Term Sheet draft, which was inadvertently

incorporated in the initialed document. The bolded **non-binding** statement had to have been seen

because it is **marked up by hand** (one would think if this were meant to be a final agreement

and they were crossing out words in the same paragraph they would have taken out the non-

binding term – which is the only bolded term in the entire paragraph):



**(Dkt. No. 90-5).**

  The Plaintiff still contends the parties have somehow negotiated all terms, and that the



There are no indicia that the parties intended to be bound here – it is the opposite –

they were still figuring out drafting for "Next Steps" agreements – not performances:



**(Dkt. No. 90-5).**

█████████████████████████████████████████████████████████ ,

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ **(Dkt. No. 90-5, p.2.)**

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

There are no indicia that the parties intended to be bound here – it is the opposite – they were still negotiating further agreements. The language of the document is the most important factor and it weights in Defendants' favor.

To undermine the meaning of the Term Sheet's unambiguous terms, Plaintiff proffers: 1) a March 26, 2019 email from Defendants' prior counsel, Mr. Kronley sent in anticipation of the second mediation conference, whereby Mr. Kronley confirms Defendants intent to attend the April 9, 2019 mediation and states that Defendants are not interested in a piecemeal resolution of the dispute; 2) an email sent by Mr. Kronley the day after the April 9th conference attaching a copy of the initialed Term Sheet, without more; 3) a standard settlement conference agreement stating that any written settlement agreement or memorandum of understanding *memorialized on the record* would be binding; and 4) two emails from Defendants' prior counsel, Mr. Kronley dated July 23 and August 19, 2019 whereby Mr. Kronley, among others, summarized the parties post April 9 negotiations.

It is well settled, that when the plain meaning of the text is clear and there are no ambiguities, as is the case here, courts will not resort to extrinsic evidence. *CP III Rincon*

*Towers, Inc. v. Cohen,* 666 Fed. Appx. 46 *; 2016 U.S. App. LEXIS 21269 **; 2016 WL 6989480 (2nd Cir. 2016).

In abundance of caution, however, Defendants will address Plaintiff's arguments.

First, Mr. Kronley's email in anticipation of the second mediation conference confirms solely Defendants' intent to attend the April 9, 2019 mediation and states that Defendants are not interested in a piecemeal resolution of the dispute. The document speaks for itself.

Second, Mr. Kronley's April 10, 2019 email simply forwards, without more the Term Sheet initialed the previous day during the conference mediation. A letter of attorney simply enclosing a proposed agreement do not constitute binding contract. *In re Estate of Perera*, 3 Misc. 2d 1043, [pin cite] 155 N.Y.S.2d 894, 1956 N.Y. Misc. LEXIS 1716 (N.Y. Sur. Ct. 1956), aff'd, 5 A.D.2d 972, [pin cite] 173 N.Y.S.2d 240 (N.Y. App. Div. 1st Dep't 1958).

Third, the Settlement Conference Agreement is a standard form, executed prior to the mediation conference stating that the parties intend to be bound by a settlement agreement, if any, that is **memorialized on the record**. It is fundamental principal of contract construction that a "definitive, particularized contract language takes precedence over expressions of intent that are general, summary, or preliminary." *Emphasis added.  John Hancock Mutual Life Ins. Co. v. Carolina Power and Light Co.*, 717 F.2d 664, 669 n. 8 (2d Cir.1983) ; see also *William Higgins & Sons, Inc. v. State of New York, 20 N.Y.2d 425, 231 N.E.2d 285, 284 N.Y.S.2d 697 (1967),* where the court held that a specific provision will not be set aside in favor of a general, catchall clause. Therefore, the Term Sheet must take precedence over the Settlement Conference Agreement, which is preliminary and general in nature.

Finally, the two letters sent by Mr. Kronley on July 23 and August 19, 2019 do not help Plaintiff's case, as discussed *Infra*.

b.  <u>There has been no partial performance</u>

Neither Plaintiff, nor Defendants performed under the terms of the Term Sheet. This is undisputed by Plaintiff. This factor also weights in Defendants favor.

c.  <u>Open Terms</u>

The existence of open terms is a strong presumption against finding binding agreements.

█████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████

   ████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████  What if Stream TV could not represent so?

In the July 23, 2019 email Mr. Kronley states:

"To ensure that we are on the same page from our July 8 meeting and subsequent discussions, the parties intend to ██████████████████████████████████, ██████████████████████████████████████████████████ ██████████████████████████████████ **Dkt. No. 90-12.**

This correspondence clearly shows that the parties continued to actively negotiate the terms of their agreement after the April 9, 2019 conference.

More importantly, in his August 19, 2019 letter, updating the court of the status of the negotiations, Mr. Kroney reiterated Defendants' position that the Term Sheet is "non-binding", and went on to summarize the parties post April 9 discussions, including their July 8, 2019 meeting, and the next steps, such as ███████████████████████████████████ ████████████████, as discussed during their July 8, 2019 meeting.

Both emails show that the Term Sheet has left open terms and that subsequent to the April 9 mediation conference, the parties continued negotiating their settlement including ████████ a███████████████████████████████████████████████. Indeed, the parties continued their negotiations until February 2020, months after the April Term Sheet. (**Dkt. No. 90-20**). Only after the settlement negotiations fell apart, did Plaintiff seek to reimagine the non-binding April 9, 2018 Term Sheet from the settlement conference. Negotiations conducted after the execution of a preliminary agreement weight against its binding effect. See *HDtracks.com, LLC v. 7digital Grp. PLC*, 2019 U.S. Dist. LEXIS 200898 *; 2019 WL 6170838 (SDNY 2019).Therefore, this factor also weights in Defendants' favor.

d.  The type of agreement requires formal writing

New York courts have recognized that the complexity and duration of an alleged agreement is particularly significant in determining whether it must be reduced to formal writing in order to be fully enforceable. *Main St. Baseball, LLC*, 103 F. Supp. 3d at 259 (NDNY 2015). Plaintiff does not dispute that the Term Sheet contemplated a term up to December 31, 2030 – over 10 years from April of 2018. Due to the decade plus long-term commitment and the complexity of the agreements, the 4 pages of Term Sheet calling for further agreements to be

negotiated is insufficient to constitute a required writing. The case at bar in this respect is distinguishable from _Stonehill Capital Mgmt. LLC v. Bank of the West_, 28 N.Y.3d 439, 448-49 (2016) cited by Plaintiff, which deals with the post-agreement deposit and signed writing requirement in the context of an auction. In this context the court found that post-agreement deposits and signed writings were condition precedent to the execution of a party's obligation and not to the formation of the contract.

Therefore, this factor also weights in Defendants' favor.

e. _The context of negotiations_

The context of negotiations is a factor heavily relied on by the Plaintiff. Yet this factor is applicable only with respect to Type II preliminary agreements. Therefore, to the extent that Plaintiff does not allege a Type II agreement, it shall not be considered.

Finally, the cases cited by Plaintiff are inapposite or do not support Plaintiff's position. _Mun. Consultants v. Ramapo_, 47 NY 2d 144, 149 (1979) is distinguishable as the agreement in that case did not provide any indicia that the parties intended not to be bound. That is not the case here. In _RG Group, Inc. v. Horn & Hardart Co._, 751 F. 2d 69, 74 (2d Cir. 1984) the court concluded that a development franchise agreement did not bind the parties, where there was clear understanding between the parties that they intended to be bound only by a written agreement, an no such agreement was ever executed.

II.    ENFORCEABILITY UNDER NY GOB 5-701

Plaintiff contends that regardless of whether or not the Term Sheet itself is a binding agreement, the email forwarding the Settlement Term Sheet by Mr. Kronley constitutes a contract under NY GOB 5-701. This is incorrect. The fact that the Term Sheet was simply forwarded to Plaintiff does not transform a non-binding agreement into a binding one. A letter of

an attorney simply enclosing a proposed agreement does not constitute a binding contract. See _In re Estate of Perera_, 3 Misc. 2d 1043, 155 N.Y.S.2d 894, 1956 N.Y. Misc. LEXIS 1716 (N.Y. Sur. Ct. 1956), aff'd, 5 A.D.2d 972, 173 N.Y.S.2d 240 (N.Y. App. Div. 1st Dep't 1958) (letter of attorney enclosing proposed agreement and stating that such agreement was drawn at decedent's request, was not a writing signed by the deceased's agent having authority to impose liability upon deceased). At the most it confirms the existence of "a contractual relationship in accordance with terms to be established by reference to properly connected writings. See _Scheck v. Francis_, 33 A.D.2d 91 *; 305 N.Y.S.2d 217 **; 1969 N.Y. App. Div. LEXIS 2820 (1st Dept. 1969). Here we have no connected writings – they were still subject to negotiation.

III.     ENFORCEABILITY UNDER N.Y. U.C.C.

Similarly, with respect to UCC, Plaintiff essentially argues that because the initials constitute signature under the caselaw the Settlement Term is a signed agreement and consequently shall be binding. Plaintiff concludes that because defendant has not objected to the content of the Term Sheet within 10 days, the Term Sheet binds the parties. This is not so. The lack of objection by defendants did not remove explicit agreed upon terms from the Term Sheet, namely that the Term Sheet is non-binding and that the parties' settlement is contingent upon execution of at least four other agreements. Moreover, there was no reason for Defendants to object to the Term Sheet's non-binding effect because Defendants intended the Term Sheet to be non-binding. Indeed, Plaintiff and not Defendants should have objected to the content of the Term Sheet within 10 days and request that the non-binding languages be removed therefrom, but it did not.

IV.    DELAWARE LAW

Under the Delaware law, Plaintiff relies on *SIGA Technologies, Inc. v. PharmAthene, Inc.*, 67 A. 3d 330 (Del. Sup. Ct. 2013). This case is distinguishable. In *SIGA Technologies, Inc. v. PharmAthene, Inc* the court held that a Term Sheet that was not signed and contained a footer on each page stating "Non Binding Terms," was not binding by itself, but became binding by its incorporation by reference into a Bridge Loan and Merger Agreement *executed* by the parties. The court reasoned that the "incorporation of the LATS into the Bridge Loan and Merger Agreements reflects an intent on the part of both parties to negotiate toward a license agreement with economic terms substantially similar to the terms of the LATS if the merger was not consummated." This is not the case here. It is undisputed that the parties have not executed any agreement incorporating the terms of the Term Sheet. Therefore, the Term Sheet is non-binding under Delaware law.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion seeking to enforce the Term Sheet, in its entirety.

Dated: May 20, 2020

Respectfully submitted,

CITTONE DEMERS & ARNERI LLP

By: /s/ Antoaneta V. Tarpanova
Antoaneta V. Tarpanova
Henry J. Cittone
11 Broadway, Suite 615
New York, NY 10004
Tel. 212-624-0244
Email: hcittone@cdalawllp.com
*Attorneys for defendants Raja Rajan, Mathu Rajan and Stream TV Network, Inc.*